# DISTRICT OF COLUMBIA *v.* ATCHISON.*

MUNICIPAL CORPORATIONS; HIGHWAYS; CHANGE OF GRADE; NEGLIGENCE; DAMAGES.

1. On an appeal by the municipality from a judgment, on verdict, in an action by a property owner to recover damages for negligence in changing the grade of an alley and street adjoining the plaintiff's house, where there was evidence tending to show that, during the work of changing the grade of the alley, the alley was left in such condition that water washed dirt into the cellars of the houses, ruining furnaces and making the pipes damp, it was *held* that an instruction to the jury, granted on behalf of the municipality, telling them that there was no legally sufficient evidence that there was any unskilfulness in the manner of grading the alley, was erroneous, and also in conflict with the charge of the court to the jury, and therefore confusing.

2. A municipality is not liable to property owners for consequential damages caused by the change of grade of a street and alley, unless the work was done in a negligent manner, in which event it is liable for the injury caused by such negligence.

3. If a property owner, during the work of changing the grade of a street and alley adjoining his house by the municipality, requests the municipal officers to remove dirt from the alley and to place it on the street, so as to make the grade of the street and alley more nearly conform, and that is done, he is chargeable with notice, equally with the municipality, of any unforeseen cause of delay that may arise, not directly chargeable to the independent act of the municipality; but he does not thereby waive his right to complain of the negligence on the part of the municipality either in the manner of placing dirt on the street, or in leaving the street in an unfinished and impassable condition, unless subsequently he does some act amounting to a waiver of such negligence.

4. If, in an action by a property owner against the municipality for damages for negligence in grading a street and alley adjoining his house,

---

*Highways.*—As to right of abutting owner to damages for change of grade of street, see note to *Selden* v. *Jacksonville,* 14 L.R.A. 371.

it appears that the plaintiff had requested the defendant to take dirt from the alley and place it on the street, so as to bring the grade of the street up to the grade of the alley, and the work was thereafter begun and continued by the defendant as rapidly as the weather would permit until its completion, the plaintiff cannot recover for damages suffered by him during that period; nor would he be entitled to damages if the work was delayed by a lack of appropriation, of the condition of which it was his duty to inform himself at the time of making such request; and, under such circumstances, it is error for the trial court to refuse to submit the question of the effect of such request by the plaintiff on his right to recover damages, with proper instructions.

No. 1831.   Submitted March 4, 1908.   Decided April 20, 1908.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action against the District of Columbia, to recover damages alleged to have resulted from the change of the grade of a street and alley.                                    *Reversed.*

The facts are stated in the opinion.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Henry P. Blair,* Assistant, for the appellant.

*Messrs. Lancaster & Smith* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an action on the case brought by appellee, Eugene A. Atchison, in the supreme court of the District of Columbia against the appellant, District of Columbia, defendant below, to recover damages arising from the grading of a street and alley adjacent to his property.   On April 4, 1905, appellee, hereafter referred to as plaintiff, purchased lots 49 to 81, inclusive, in block 3, Ingleside, situated on the south side of Ingleside terrace, between 18th and 19th streets, northwest, in the city of Washington.   It appears that this property, when purchased by plaintiff, was a natural forest, starting at a point a considerable distance south of plaintiff's property and descending at a

somewhat abrupt grade north over the property in question at
a point several hundred feet north of Ingleside terrace.    Be-
tween April 12, 1905, and March 1, 1906, plaintiff constructed,
on said lots, twenty-nine three-story brick dwellings.    Ten of
the houses were completed prior to December 18, 1905.

It also appears that, for five or six years prior to the pur-
chase of the lots by plaintiff, Ingleside terrace had been a pub-
lic street, 60 feet wide, with paved sidewalks, coblestone gutters,
cement curb, and gravel roadway from 18th street and Howard
avenue to 19th street and Howard avenue.    Defendant fur-
nished plaintiff with a grade sheet, before work was commenced
on the construction of the houses, showing a 15-foot alley at the
rear of plaintiff's lots, extending between 18th and 19th streets,
and also showing a new grade of the street several feet above the
natural grade as it then existed.

In his declaration, plaintiff, in substance and effect, alleges
that, while plaintiff had said houses in course of construction,
defendant, at the request of plaintiff, began opening and grad-
ing the alley; that the dirt taken from the alley was dumped in
heaps and mounds in said Ingleside terrace, in front of plain-
tiff's property; that, when defendant had cut away several feet
of dirt from the alley without paving or completing the same,
it wrongfully and recklessly abandoned the work in such ruinous
and damaging condition that the property of plaintiff was sub-
jected to the overflow of water, caving and falling earth, which
spread over and covered the entire rear of said property, to the
great annoyance and damage of plaintiff.

It is further alleged that, on or about the 15th day of Novem-
ber, 1905, the defendant, through its Commissioners, without
authority, and in wilful, malicious, and oppressive abuse of
authority, in order to injure the plaintiff, and wholly without
regard to plaintiff's rights of property, or the damage to be
caused to said real estate and houses thereby, and against plain-
tiff's protests, maliciously, recklessly, wrongfully, and negli-
gently entered upon said Ingleside terrace and completely tore
up and rendered the same wholly impassable and useless for
ingress and egress to and from plaintiff's said property.

Plaintiff further alleges that, on or about the 25th day of April, 1906, he protested against the action of the Commissioners in dumping dirt upon said street, and requested that said nuisance and condition be abated and changed; that the said alley be completed and paved; that the street be placed in a passable and useful condition, so that plaintiff, and his grantees and lessees, should have ingress and egress to and from said property; that, in answer to said protests, the defendant, on or about the 31st day of May, 1906, continued the excavation of said alley and completed the grade of the same, thereafter paving it with brick; that defendant, on or about the same date, somewhat leveled the earth theretofore and then taken from said alley and dumped therein, and raised or filled said street some 3 or 4 feet.

It is further alleged that, in this condition, and without raising said street to the grade, as defendant, through its Commissioners, stated it intended to do, and without laying any curbing or sidewalk, the defendant, on or about the 31st day of June, 1906, negligently, recklessly, and wrongfully abandoned the same, and has maliciously, negligently, wrongfully, and unlawfully permitted said Ingleside terrace, in front of and along the property of plaintiff, against his protests, to remain in such ruinous condition as to deprive plaintiff, his grantees and lessees, of ingress and egress to and from said property, as they are lawfully entitled to enjoy.

Plaintiff prayed damages in the sum of $43,500. To this declaration, defendant entered a plea of not guilty in the manner and form alleged. On the issue joined and trial had, a verdict was rendered for plaintiff for the sum of $5,000. From the judgment entered thereon, defendant prosecutes this appeal.

The record discloses that the first grade of Ingleside terrace was established in 1902. The street was on this grade at the time that plaintiff purchased the lots in question and was preparing for the erection of his houses in the spring of 1905. At this time the surface of the rear of the lots next to the alley was, in some places 25 or 26 feet higher than the level of the street.

On April 5, 1905, the loan company, furnishing plaintiff with

money to carry on his enterprise, addressed a letter to the Com-
missioners of the District requesting that it be furnished with
an approved grade of both the street and alley. In response to
this request, a grade of the alley was furnished, also a grade of
the street raising the street from 4 to 6 feet above the then ex-
isting grade. A blue-print map showing this grade was fur-
nished to the plaintiff. Under these conditions, he proceeded,
during the year 1905, with the construction of his houses.

On August 30, 1905, plaintiff addressed to the Commission-
ers the following communication: "Gentlemen:—I respect-
fully request that the alley be graded and paved in the rear of
my lots numbered 49 to 81, both inclusive, in block 3, Ingle-
side." In response to this letter, the matter was taken up by
the officers of the District; the legal notice for objections to
the opening of the alley was published, as required by law; and
a date set for a hearing. Following this, the work was ordered
on November 9, 1905. The work of excavating the alley was
begun on the 29th of December, 1905. Work was continuously
carried on until the 17th of January. This work consisted of
grubbing out and removing the forest trees standing on the alley
site and excavating and hauling dirt. Work on the alley was
suspended on the 17th of January, and not resumed until the
28th of February. The work was continuously carried on until
the 7th of March, when the alley had been excavated to the
established grade. It was then discovered that plaintiff had ex-
cavated the rear of his lots, in some instances, 4 feet below the
grade of the alley. The matter was taken up with the city au-
thorities, and there is evidence tending to show that an agree-
ment was entered into between the city engineer and the plain-
tiff for the establishment of a new grade of the alley and the
street. The witness Hunt, engineer of highways, testified that
he was directed by the engineer commissioner to construct "a
retaining wall in the alley as a part of the work of grading and
opening the alley so as to prevent the dirt from coming into the
back yards of these houses. He told the plaintiff that he
thought it was a poor plan to do that from his point of view,
and that he wanted to avoid it if he could, from the point of

view of the District, and suggested to the plaintiff that the defendant make a change in the alley grade, and alter it so as to more nearly fit the yards of the houses. Witness also explained that, if the alley grade be lowered, it would result in a large amount of dirt being available to be taken from the alley and placed in Ingleside terrace, so as to bring it (the terrace) up nearer the level of the fronts of the houses." This witness also testified that he explained to the plaintiff the advantages of having the grade of the alley lowered to more nearly correspond with the level to which plaintiff had excavated the rear of his lots, and also that plaintiff would have to bear one half the expense of constructing a retaining wall. The same witness further testified that no positive decision was reached at the time the above conversation occurred, but that later he went to the premises and met Mr. Lancaster, attorney for plaintiff, and plaintiff; that he again explained the advantages of lowering the grade of the alley and raising the grade of the street in order to reduce the grade between the alley and the street as much as possible. He testified that Lancaster talked for some time with the plaintiff, and then returned to him, the witness, assuring him that the plaintiff had agreed that the change should be made. In pursuance of this agreement, witness testified that the grades were changed on April 27, 1906, and approved by the engeneer commissioner on April 28, 1906; that "the actual physical effect of which was the lowering of the grade of the alley by, we will say, 2 feet—it was very little—and the raising of the street by possibly the same amount, possibly a little more, 2 or 3 feet, bringing the street up and the alley down, and thus adjusting the grade in front and rear of the property where they were too high and too low; and the work from that date was carried on in accordance with those grades." It further appears that the gas mains had to be lowered before the alley could be changed to the last grade established. Consequently, no further work was done in the alley until May 5, when work was resumed, the alley excavated to the grade, the dirt removed onto the street, and the brick pavement laid in the alley, which was completed on the 12th of June, 1906.

When the work of excavating and grading the alley was commenced, defendant removed the gutters and sidewalks from Ingleside terrace. The dirt removed from the alley was dumped in the street and leveled off to some extent, raising the street 5 or 6 feet. There is some evidence to the effect that this was done at the request of plaintiff, but this he denies. There is evidence to the effect that the street was thus rendered, at times, impassable for teams for several months. The street sewer, owing to the manner in which the dirt was placed upon the street, was filled up; there was no means of drainage, and water remained after every rain until it soaked into the earth, making the street, according to the evidence of plaintiff, "a perfect mudhole," and the only means of access to the plaintiff's houses was by a walk which he had laid on the lower terrace. On March 12, 1906, plaintiff requested the defendant to have Ingleside terrace brought to grade, leveled, and a pavement laid. To this request, defendant replied as follows:

Executive Office
Commissioners of the District of Columbia,
Washington.

March 20, 1906.

Mr. E. A. Atchison,
        1316 14th street, Northwest.
Dear Sir:—

In response to your request of the 12th instant that Ingleside terrace be graded and sidewalks laid thereon, between 18th and 19th streets, the Commissioners direct me to inform you that the improvement of Ingleside terrace will have to be made the subject of a special appropriation by Congress. The present surface of the street is so far below the approved grade that it is impracticable to lay sidewalks until provision is made as above stated to bring the street to grade.

Very respectfully,
                    W. Tindall,
                            Secretary.

There is evidence to show that this condition existed up to the last of September, 1906, when plaintiff lost the property at trust sale. Plaintiff, however, alleges in his declaration that, about the 31st of May, 1906, when the work of excavating the alley was finally completed, defendant did some leveling on the street. One witness testified that he frequently visited the property during the summer of 1906, and was able to drive over the street, but that it was rough and muddy during the wet weather.

The court instructed the jury, in substance, that streets and alleys are maintained, primarily, as arteries of commerce for the use of the public generally, and, secondarily, for the benefit of the individual property owner. The local municipal authorities are vested with full opwer to determine when a street shall be graded or built. When a street is opened and in use by the public, the authorities are obliged to maintain it in a reasonably good condition to accommodate the needs of the public. In this case no alley had been constructed. Defendant was under no obligation to build the alley, and was not obliged to complete it after the excavation had been begun. Plaintiff cannot recover damages for any mere inconvenience he may have suffered by delay in completing the alley. He can only recover damages in the event that defendant carried on the work in such a negligent manner that it caused an extraordinary flow of water upon the property of plaintiff. Every property owner must stand any inconvenience that is necessarily involved in constructing the streets in a reasonably careful manner, but he is not required to bear a damage which is occasioned to his property by the bringing upon his property either of water or of soil through the act of the public authorities. "So that if, in that regard, you find that the work that the District did do in the alley was done in a negligent way which resulted in bringing either water or soil upon his property, and that the District could have avoided doing that by the exercise of reasonable skill and care in doing as much as they did do, then in that regard he would be entitled to recover. The only other theory upon which he could recover at all in connection with the alley would be in case the District,

after it had finished what it did do, left that alley in a condition so that it drained upon his property surface water which would not have come upon his property as the land lay, itself. In other words, the District had no right to accumulate, by an alley, surface water, and conduct it upon and over the plaintiff's property, in excess of that which would have fallen there by the natural lay of the land. Outside of those two, there is no other theory upon which he can recover for any alleged damage that was done in the work upon the alley."

The court further charged that, with respect to the streeet, a different condition exists. When plaintiff purchased his property, the street was there, built and completed. The duty rested upon the District of maintaining the street in a reasonably proper condition for the use of the public. "You observe that, merely for the change of grade in the street, the plaintiff cannot recover, nor can he recover for the mere inconvenience that he was put to during the time that would have been necessary to grade the street, using reasonable skill and care; but he can recover if you find that the District put the street in front of his property in such a condition as to render it impassable, and maintained it in that impassable condition for such length of time as would constitute negligence." The District had the right not only to change the grade, but it had the right to do everything that was reasonably necessary in order to accomplish that change. In changing grade, the authorities may make cuts and fills, and the property owner cannot complain of anything that was reasonably necessary in order to change the grade; but he can complain if the authorities take an unreasonable length of time to complete the work. The authorities had the right to make the street in front of plaintiff's houses impassable, since it was necessary for the completion of the grade; but they had not the right to put the street in an impassable condition and maintain it in that condition for an unreasonable and unnecessary length of time. The jury will have to decide from the evidence whether the street was put in an impassable condition, and, if it was, whether or not it was maintained in such condition an unreasonable and unnecessary length of time. If you

find that it was so maintained for an unreasonable and unnecessary length of time, the plaintiff "would be entitled to recover from the District the damages, if any, that he sustained during the interim from what would have been a reasonable time for them to have completed the grading there, up to the time that the plaintiff lost control of the property." The court then instructed the jury on the measure of damages; but, as no exception was taken by counsel for defendant to that portion of the charge, it is unnecessary to consider that question.

It is contended that the court erred in giving the following instruction to the jury at the request of plaintiff: "If the jury believe from the evidence that the plaintiff was the owner of said property, and, while said houses were under way of construction, or about the completion of the same, the District of Columbia, the defendant, commenced to grade the alley in the rear of said property, and that, before the completion of the proposed grade, it abandoned the same for an unreasonable time and in an unsafe condition, without pavement and necessary drainage, and in a reckless and negligent manner, while it had the means to complete said grade, or the control thereof; and that, because of such acts of the defendant, said property of the plaintiff was unnecessarily subjected to and suffered from overflow of water and loose earth, so that its usefulness was effectually destroyed or impaired, which condition could have been avoided had the defendant used due skill and care,—then the plaintiff is entitled to recover such an amount as will compensate him for the damage so sustained." This instruction does not differ in effect from the general instructions given by the court on the same subject. It relates entirely to the matter of negligence in leaving the alley in a condition whereby plaintiff's property, from overflow, might be destroyed or impaired. It merely emphasizes the instructions already given on this subject. We think that this instruction, taken in connection with the general charge given by the court, in so far as above referred to, constitutes a fair expression of the law.

Counsel for defendant requested the following instruction, which was given by the court: "The court instructs the jury

that there has been no legally sufficient evidence that there was any unskilfulness in the manner of the grading of the alley or the manner of the grading of Ingleside terrace; nor has there been any sufficient legal evidence of gross abuse of authority or discretion in grading Ingleside terrace." In view of the evidence before the jury for its consideration, we are of opinion that the court committed error in giving this instruction. There was evidence to the effect that the alley was left in such a condition that the water washed dirt into the cellars of the houses, "ruining the furnaces and making the pipes damp." This evidence tended to show that defendant had unskilfully performed the work and negligently left the alley in the condition described. The question of negligence had been properly submitted to the jury by a clear and able announcement of the law applicable thereto. The above instruction tended to take the consideration of this subject from the jury, and to that extent was in conflict with the general charge of the court. It added nothing to the charge, was confusing to the jury, and should not have been given.

Under the general plan originally adopted for the founding and establishment of the city of Washington, the legal title to all streets is vested in the United States, and, consequently, they may be regulated and controlled either by Congress directly, or by such individuals or corporations as are authorized by Congress. It is conceded in this case that the commissioners of the District have full power to change the established grades of streets and alleys within the District, and that no liability can attach to the District for the performance of such acts as are necessary to accomplish such change. But it is contended that the liability consists in the performance of the work in such a negligent manner that the plaintiff suffered a special damage thereby. It is well settled that plaintiff could not recover for any mere inconvenience suffered, or temporary loss occasioned, by reason of the change of this grade. Private interest must yield to public accommodation. A property owner in a city cannot require the grade in a street to conform to his convenience at the expense of that of the public. The District is not

liable for consequential damage caused by the change of grade
of a street, unless the work be done in a negligent manner, in
which case it would be liable for the injury caused by its negli-
gence. In this case it is not the grading of the street for
which complaint is made. The whole question here is one of
negligence. It appears that no permanent damage was done to
the property of plaintiff. There is nothing to bring the case
within the provision of the Constitution forbidding the taking
of private property for public use without just compensation.
Plaintiff knew of the proposed change of grade before he erected
his houses, and seems to have made no objection. He con-
structed two terraces in front of his houses; the lower one was
on a level with the street, and the second one on a level with the
proposed grade which had been established before building was
commenced.

If plaintiff assented to the use of the material from the alley
for the purpose of grading the street, or requested that it be
so used, he would not only be estopped by such consent from
complaining of the change of grade, but of any unexpected con-
tingencies that might arise and cause delay in the completion
of the work. In other words, if the material taken from the
alley was placed on the street at the request of plaintiff, he is
chargeable with equal notice with defendant of any unfore-
seen cause of delay that might arise, not directly chargeable to
the independent act of defendant. It cannot, however, be pre-
sumed that, in giving his consent to, or requesting the city to
place the dirt on the street, he waived his right to complain of
negligence on the part of the officers of defendant, either in the
manner of putting it there, or of leaving the street in an un-
finished and impassable condition, unless he subsequently did
some act that would be equivalent to a waiver of any claim that
he may have had for such negligence.

This brings us to a consideration of the principal question
involved in this appeal. Evidence was offered on behalf of the
defendant to the effect that, before any excavation was made in
the alley, plaintiff requested that the dirt taken from the alley
should be hauled upon the street and used to bring the street

up to the grade that had been furnished him by defendant. We are impressed with the force that should be given this evidence in connection with a fair consideration of the facts in this case. The physical conditions there existing were such that the plaintiff would not only be benefited by the proper removal of the dirt from the alley to the street in the adjustment of the grades, but also from the fact that one half of the expense of excavating and constructing the alley was chargeable against his property. He had a direct financial interest in having the material from the alley disposed of at the least possible expense. The probability of the existence of such an arrangement is further emphasized by evidence tending to show that a second agreement was entered into between the plaintiff and the officers of defendant, as late as April 26, 1906, by which the grade of the alley was lowered and the street raised, and in which it was agreed that the material from the alley should be deposited in the street. This property was situated upon a hillside. It was manifestly a great advantage to the plaintiff to have the alley excavated to as low a grade as possible and the street raised to a correspondingly high grade. The important bearing that such an arrangement, if found to exist, would have on the final outcome of the case, called for the submission of this point to the jury with proper instructions. Defendant submitted several prayers on the effect of such an arrangement between the plaintiff and defendant, which were refused by the court. At the conclusion of the court's charge to the jury, counsel for defendant stated: "I would like to ask your Honor whether you desire to say anything to the jury about the effect of the consent of the plaintiff to the dumping of the dirt on Ingleside terrace, if they find any such thing in the evidence."

"The court: I do not think it has anything to do with the outcome of the case, for this reason: The District had a right to put the dirt there, whether he consented to it or not, and, if he did consent, yet, it is not to be presumed that he consented that they should maintain it there for an unreasonable length of time."

In view of the facts presented by the record in this case,

we think the refusal of the court to submit this question to the jury, with proper instructions, was error. We are of the opinion that, if the plaintiff requested defendant to place the material taken from the alley upon the street, and this work was thereafter begun and continued by defendant as rapidly as the weather and the local conditions would permit until its completion, plaintiff would be estopped from claiming any damages that he may have suffered during said period.

This agreement, if found to exist, relieved the defendant of any responsibility for inaugurating the work at a season of the year when the uncertainty of the weather would probably interfere with the speedy completion of the work. There is evidence to the effect that the work in reducing the alley to the original grade was delayed because of the unfavorable condition of the weather. This was a condition for which the defendant was not responsible, and the probability of such a condition arising was something of which plaintiff was bound to take notice when he requested defendant to open the alley and place the dirt upon the street. It therefore follows that, if plaintiff requested the dirt to be placed upon the street at a time when there was great uncertainty as to defendant's ability to complete it within a reasonable period, he would be estopped from claiming any damage for any delay caused by reason of bad weather or conditions over which the defendant had no control and of which the plaintiff was bound to take notice between the time that work was begun on the alley, December 29, 1905, and the date of its final completion, June 12, 1906.

It is contended that the defendant was not in a position to finish the work for lack of funds, and that the commissioners, being cognizant of that fact before the work was commenced, were not justified in beginning a work which they could not finish. Therefore, it is insisted that they had no authority to proceed with the grading of the street, as evidenced by their letter of March 20, 1906. We think plaintiff, as a citizen and taxpayer, was chargeable with notice of the condition of the public treasury. At least, if he requested that the material taken from the alley be deposited in the street, it was his duty to

inform himself of the condition of the appropriation before entering into such an arrangement. The last change of grade, which defendant insists was made by agreement with plaintiff, was decided upon April 28, 1906, more than a month after the letter referred to was written. If plaintiff entered into this agreement, he did so knowing the condition of the treasury and the lack of power on the part of the commissioners to finally complete and pave the street. The commissioners had power to excavate and pave the alley, half of the expense of which was borne by plaintiff. They had the power to remove the material from the alley into the street, which could be done at less expense than to move it to any other point. This saving of expense was shared by plaintiff. It does not appear, however, that defendant was prevented from carrying on the work up to the date of completion of the alley by reason of the condition of the treasury. The letter related to the completion of the street, and not the alley. The alleged arrangement for depositing the material from the alley in the street was a continuing one between the parties until the material was all removed; and, inasmuch as the defendant had the power, and presumably the means, to complete the alley and deposit the material in the street, it is apparent that the condition of the treasury could have no bearing upon the case until after the agreement was concluded and the alley constructed.

At this point, however, defendant, for lack of funds, was prevented from proceeding further. Plaintiff's brother, a witness introduced on his behalf, testified that, during the summer of 1906, plaintiff excavated foundations for two houses, and, by permission of defendant, hauled the dirt onto the street. On this point, the record discloses no conflict. Thus we find plaintiff, with full knowledge of the condition of the treasury, assisting in bringing the street to the point where it was impossible to complete it until there was a further appropriation by Congress. And, when the defendant was in a position where it could proceed no further, we find plaintiff still engaged in hauling material on the street. It is difficult to conceive just how plaintiff, under the evidence above referred to, can charge the

defendant with negligence for proceeding without sufficient funds to complete the work.

It must be remembered that we express no opinion as to whether or not the evidence is sufficient to establish the existence of an agreement relating to the removal of the material from the alley to the street, or the last change of grade, or the depositing of dirt by plaintiff on the street during the summer of 1906, but, considering its great importance in this case, it was error for the court not to instruct the jury as to the consideration that should be given it, if found to be true, in arriving at a proper verdict.

The judgment is reversed with costs, and the cause remanded with instructions to grant a new trial.            *Reversed.*